## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CLAUDIA SAMPEDRO; JOANNA KRUPA;
LUCY PINDER; TIFFANY TOTH; and
URSULA SANCHEZ a/k/a URSULA MAYES,

*Plaintiffs*,

v.

CALIFORNIA NIGHTCLUB, INC. and YOEL
HERRERA,

*Defendants*.

Civil Action No.: 19-cv-

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Plaintiffs CLAUDIA SAMPEDRO; JOANNA KRUPA; LUCY PINDER; TIFFANY

TOTH; and URSULA SANCHEZ a/k/a URSULA MAYES, (collectively, "Plaintiffs"), by and

through their undersigned counsel, as and for their Complaint against defendants CALIFORNIA

NIGHTCLUB, INC. d/b/a ATTIKA and YOEL HERRERA (collectively "Defendants")

respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants'

misappropriation, alteration, and unauthorized publication and use in advertising of images of

Plaintiffs, each of whom are well-known professional models, to promote their nightclub, Attika

located in Lawrence, Massachusetts ("Attika" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of

Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of

section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading

representations of fact in commercial advertising and the false or misleading use of a person's

image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Massachusetts's Unfair Trade Practices Act (M.G.L.A. 93A § 11); d) violation of Massachusetts's right of publicity statute (M.G.L.A. 214 § 3A;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      Defendant CALIFORNIA NIGHTCLUB, INC. is a Massachusetts corporation with its principal place of business located at One Mill Street, Lawrence, Massachusetts 01841. CALIFORNIA NIGHTCLUB, INC. operates Attika, which is located at One Mill Street, Lawrence, Massachusetts 01841.

7.      Venue is proper in the United States District Court for the District of Massachusetts because Lawrence, Massachusetts is Defendants' principal place of business.

8.      Primarily and substantially the alleged causes of action arose and accrued in Lawrence, Massachusetts and the center of gravity for primarily and substantially all relevant events alleged in this complaint is predominately located in Lawrence, Massachusetts.

## PARTIES

*Plaintiffs*

9.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

10.     Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Miami-Dade County, Florida.

11.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester, England.

12.     Plaintiff Tiffany Toth Gray a/k/a Tiffany Toth ("Toth") is a well-known professional model, and a resident of Orange County, California.

13.     Plaintiff Ursula Sanchez a/k/a Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

*Defendants*

14.     Defendant CALIFORNIA NIGHTCLUB, INC. is a Massachusetts corporation with a principal place of business in Lawrence, Massachusetts.  During times relevant to this action, CALIFORNIA NIGHTCLUB, INC. operated Attika in Lawrence, Massachusetts.

15.     On information and belief, Defendant Yoel Herrera is a Massachusetts resident. According to publicly available records, and upon information and belief, YOEL HERRERA, in his capacity as principal, owner and/or CEO of CALIFORNIA NIGHTCLUB, INC. maintained operational control over Attika, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

16.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and

individuals for the purpose of advertising products and services.

17.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

18.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Attika.

19.     In the case of every Plaintiff, such appearance was false.

20.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

21.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

22.     Claudia Sampedro is a Cuban born model, mother and spokeswoman. Ms. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Ms. Sampedro has appeared in many catalogues, magazine editorials and has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Ms. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare

Ava. Ms. Sampedro is in a Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Ms. Sampedro is engaged to and has a baby with Green Bay's star defensive end Julius Peppers.

23.     That we know of, Sampedro is depicted in the photos in Exhibit "A" to promote Attika on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Sampedro employed at Attika, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

24.     Sampedro has never been employed at Attika, has never been hired to endorse Attika, has never been otherwise associated or affiliated with Attika, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

25.     Joanna Krupa is a model, actress, and dancer. She has appeared on magazine covers including Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, and Maxim. Ms. Krupa was named the "Sexiest Swimsuit Model in the World" and Maxim ranked her #55 in its "2011 Hot 100". In 2004-2005, she was voted German's Maxim Model of the year. Ms. Krupa also models for ads with PETA and has appeared twice on the Playboy magazine cover. In addition, Ms. Krupa has appeared in the action film "Max Havoc: Curse of the Dragon," as well as the television show "Superstars" in June of 2009 and on Season 9 of "Dancing with the Stars." She is currently the head judge of Poland's "Next Top Model" since fall of 2010, and is a cast member for the reality TV show "The Real Housewives of Miami."

26.     That we know of, Krupa is depicted in the photo in Exhibit "B" to promote Attika on its Instagram page. This Image was intentionally altered to make it appear that Krupa employed at Attika, that she endorsed the Club, or that she was otherwise associated or affiliated

with the Club.

27.     Krupa has never been employed at Attika, has never been hired to endorse Attika, has never been otherwise associated or affiliated with Attika, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

28.     Lucy Pinder is, and at all times relevant to this action, an English model, actress, host, businesswoman and one of Great Britain's most famous glamour models. Ms. Pinder has featured in publications such as FHM, Nuts, Loaded and the Daily Star, and hundreds of others. Ms. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006 and 2007. Ms. Pinder was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of Nuts magazine cover. Ms. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) and others, and on large national and international advertising campaigns. Ms. Pinder has an established and developing acting career with many TV appearances and Film credits. Ms. Pinder has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Ms. Pinder was also a contestant on Celebrity Big Brother. Ms. Pinder had starring roles in films such as The Seventeenth Kind, Age of Kill, and Warrior Savitri. Ms. Pinder works closely with a number of Wildlife charities and is involved in fundraising for 'Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue". Ms. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Ms. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Ms.

Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram and Twitter.

29.     That we know of, Pinder is depicted in the photo in Exhibit "C" to promote Attika on its Instagram page. This Image was intentionally altered to make it appear that Pinder employed at Attika, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

30.     Pinder has never been employed at Attika, has never been hired to endorse Attika, has never been otherwise associated or affiliated with Attika, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.     Tiffany Toth Gray a/k/a Tiffany Toth is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Ms. Toth was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen, and Maxim, but has also posed for various catalogs. Ms. Toth has over 3.8 million Facebook followers, over 1.3 million Instagram followers, and 258,447 Twitter followers.

32.     That we know of, Toth is depicted in the photo in Exhibit "D" to promote Attika on its Instagram page. This Image was intentionally altered to make it appear that Toth employed at Attika, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

33.     Toth has never been employed at Attika, has never been hired to endorse Attika, has never been otherwise associated or affiliated with Attika, has received no remuneration for

Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.     Ursula Sanchez a/k/a Ursula Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in Maxim magazine. She is well known as a "suitcase model #5" from the hit game show Deal or No Deal. Ms. Mayes has appeared on Minute To Win It, The Tonight Show, and The Jay Leno Show. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, Vogue, Elle, In Style, Cosmopolitan, and Marie Claire, to name a few. Ms. Mayes is currently a cover model and a star of the game Juiced 2: Hot Import Nights. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

35.     That we know of, Mayes is depicted in the photo in Exhibit "E" to promote Attika on its Instagram page. This Image was intentionally altered to make it appear that Mayes employed at Attika, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

36.     Mayes has never been employed at Attika, has never been hired to endorse Attika, has never been otherwise associated or affiliated with Attika, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

37.     Upon information and belief, Defendants operated, during the relevant time period, Attika, where they engaged in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

38.     Upon information and belief, and in furtherance of its promotion their promotion of Attika, Defendants own, operate and control Attika's social media accounts, including its Facebook, Twitter, and Instagram accounts.

39.     Defendants used Attika's Facebook, Twitter, and Instagram accounts to promote Attika, and to attract patrons thereto.

40.     Defendants did this for their own commercial and financial benefit.

41.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked employed at Attika, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

42.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Attika to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

43.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Attika and at no point have any of the Plaintiffs ever endorsed Attika, or otherwise been affiliated or associated with Attika.

44.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

45.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

*Standard Business Practices in the Modeling Industry*

46.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

47.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Misappropriation of Plaintiffs' Images*

48.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Attika by and through various marketing and promotional mediums including, without limitation, Attika's website, Twitter, Facebook, and Instagram.

49.     Defendants showcased Plaintiffs' Images on Attika's social media pages to create the false impression that Plaintiffs worked at Attika, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

50.     Defendants did so to attract clientele to Attika, promote Attika, and thereby generate revenue for Defendants.

51.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to

potential customers that Plaintiffs worked at and/or endorsed Attika.

52.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

53.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

54.     This is especially so insofar as each of Plaintiffs' Images have been associated with a nightclub, and the implication of Defendants' use of Plaintiffs' Images is that they are , endorse a nightclub, or are otherwise associated or affiliated with a nightclub.

55.     At no point were any of the Plaintiffs ever affiliated with Attika, or Defendants.

56.     Each of Plaintiffs' Images was used without her consent.

57.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

58.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

59.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Attika website, Twitter, Facebook, or Instagram accounts.

60.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

61.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

62.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

63.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

64.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Attika or agreed to appear in Attika's advertisements.

65.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

66.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Attika.

67.     Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

68.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

69.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

70.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

71.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)**

72.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

73.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

74.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Attika, or worked at, sponsored, or approved of Attika's goods, services or commercial activities.

75.     This was done to promote and attract clientele to Attika, and thereby generate revenue for the Defendants.

76.     Thus, this was done in furtherance of Defendants' commercial benefit.

77.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Attika, nor worked at, sponsored, or approved of Attika's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Attika.

78.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

79.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact

cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

80.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Common Law Right of Privacy)**

81.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

82.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Massachusetts law.

83.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

84.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Attika's website or related social media accounts as part of Defendants' advertising campaign.

85.     At all relevant times, Attika's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

86.     Attika's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

87.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to)

"pushed" down in time from immediate visibility.

88.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

89.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

90.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Attika.

91.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

92.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

93.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

94.     Defendants' actions are an unreasonable and/or serious interference with each Plaintiff's right of privacy.

95.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FOURTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 1B*:  Right of Privacy)

96.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

97.     Defendants have violated each Plaintiff's statutory right to privacy under *M.G.L. c. 214, § 1B*.

98.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

99.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Attika's website or related social media accounts as part of Defendants' advertising campaign.

100.    At all relevant times, Attika's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

101.    Attika's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

102.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

103.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

104.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

105.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Attika.

106.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

107.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

108.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

109.    Defendants' actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

110.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Violation of *M.G.L. c. 214 § 3A*:  Unauthorized Use of**
**Individual's Name, Portrait, or Picture)**

111.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

112.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

113.    Within Massachusetts, Defendants' used each Plaintiff's image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their nightclub.

114.    No Plaintiff ever gave Defendants' written consent, authorization, or otherwise granted permission to Defendants' to use her image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

115.    Defendants were at all times aware that no Plaintiff ever authorized Defendants to use her image in advertising.

116.    As such, Defendants' misappropriation and publication of each Plaintiff's image in advertising was knowing and willful.

117.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

118.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

119.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

120.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

121.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

122.    In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute and given Defendants' willful and knowing misappropriation and publication of each Plaintiff's image, Plaintiffs are entitled to treble damages.

## SIXTH CAUSE OF ACTION
### (Common Law Right of Publicity)

123.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

124.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

125.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

126.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Blush advertising.

127.    Defendants did so without any Plaintiff's consent, written or otherwise.

128.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

129.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

130.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

131.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

132.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

133.    In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 93A § 11*: Unfair Trade Practices)

134.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

135.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under *M.G.L. c. 93A.*

136.    As set forth herein, Defendants embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs worked at the Club, endorsed the Club, or were otherwise associated or affiliated with the Club.

137.    Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

138.    Defendants actions occurred primarily and substantially within Massachusetts.

139.    Defendants were at all times aware that no Plaintiff was employed at, had contracted to endorse or promote, or was otherwise associated or affiliated with the Club, but nevertheless published each Plaintiff's image.

140.    This was done for Defendants' commercial benefit, and to the detriment of Plaintiffs.

141.    Plaintiffs suffered actual money damages by reason of Defendants' unfair and deceptive advertisements by, *inter alia*, being deprived those monies Defendants should have paid them for their appearance in Defendants' advertisements.

142.    In addition to actual damages, and in light of Defendants' knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, as provided for under this statute.

143.     In addition to actual damages, to Defendants' unfair and deceptive acts may have the effect of causing such loss to each Plaintiff's business that Plaintiffs are entitled to injunctive relief.

### EIGHTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

144.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

145.     Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

146.     Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

147.     Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

148.     Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

149.     Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and

advertising purposes were not unauthorized, non-consensual, or false and deceptive.

150.     Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

151.     Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

152.     As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Conversion)

154.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.     Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

156.     By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

157.     As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Unjust Enrichment)

158.     Plaintiffs hereby repeat and realleges each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

159.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

160.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs worked at the Clubs, or endorsed the Clubs.

161.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

162.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

163.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

164.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

165.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Quantum Meruit)

166.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

167.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

168.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

169.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

170.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c)  For punitive and/or treble damages, in an amount to be determined at trial, based on Defendants' knowing and willful misappropriation of Plaintiffs' publicity and property rights and deceptive trade practices;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Massachusetts law, including but not limited to the statutory right to privacy; statutory unauthorized use of name, portrait or picture; and the *M.G.L. c. 93 A* unfair and deceptive trade practices act; and,

(e)  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

PLAINTIFFS,

By their Attorneys,

/s/ Paul Sullivan
Paul V. Sullivan, BBO# 634466
Sullivan Whitehead & DeLuca LLP
86 Weybosset Street, Suite 400
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@swdlawfirm.com

*and*


John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel:  (646) 872-3178
Fax:: (855).220.9626
john@casaslawfirm.com
*\*Pro Hac Vice Application Forthcoming*

Dated:  July 1, 2019